# EXHIBIT "A"

## NOT A FORM CONTRACT- READ THOROUGHLY

NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT OF THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN ENGLISH"). CONSULT YOUR LAWYER BEFORE SIGNING IT.

Dated:      September 19, 2022

Seller:     Jennifer Wowk
            31 Meyers Road
            Livingston Manor, NY 12758, who agrees to sell;

Buyer:      Catskills Retreats LLC
            386 Putnam Ave
            Brooklyn NY 11216, who agrees to buy the property (the "Premises"),

including all the buildings and improvements thereon as more fully described as, all that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the State of New York, County of Sullivan, Town of Callicoon set forth and described in Sullivan County Instrument Number 2010-56990.

Together with the Seller's interest, if any, to the center line of any adjoining road(s).

Also known as Tax Map Parcel:    7.-1-38.10
                                 31 Meyers Road

The sale also includes all fixtures and articles of personal property attached to or used in connection with the property, unless specifically excluded below. Seller states that they are paid for and owned by Seller free and clear of any liens other than the existing mortgage(s) (if any). They include, but are not limited to plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, blinds, shades, screens, awnings, storm windows and doors, window boxes, mail boxes, pumps, shrubbery, fencing, outdoor statuary, tool sheds, dishwasher, clothing washer and dryer, garbage disposal units, range, refrigerator, freezer, air conditioning equipment and installations, and wall to wall carpeting, to the extent they were situate upon the premises as of the date of this agreement. All to be abandoned to Buyer in as is condition at closing having an aggregated value of less than $600.00.

1.   PURCHASE PRICE in the sum of $525,000.00 is payable as follows:
     $ 52,500.00    on the signing of this contract, by check subject to collection, payable to "Martin S. Miller," to be held in escrow in a Trust account at Jeff Bank, Monticello, NY. In the event that any instrument for the down payment shall fail collection, this contract is considered VOID AB INITIO if the instrument that failed collection is not replaced with good, certified funds within three (3) business days of notice of same.
     $472,500.00    Balance at closing

2. **MONEY AT CLOSING:**
   2.1. New York attorney trust check, official check of any bank, savings bank, trust company or saving and loan association having a banking office in New York State, payable to the order of the Seller.
   2.2. Money for adjustments may be by check from Buyer or cash.
   2.3. As otherwise agreed in writing by Seller or his attorney.

3. **CONDITION OF TITLE:** The premises shall have marketable title and be transferred subject to:
   3.1. Laws and governmental regulations affecting the use and maintenance of the premises, provided they are not violated by the buildings and improvements erected on the premises.
   3.2. Encroachments of fences, driveways, landscaping, hedges, sidewalks, and steps upon the road or within highway bounds.
   3.3. Easements, covenants and restrictions of record provided they do not prohibit the use of the premises for residential use.

4. **DEED:** At closing the Seller shall deliver a Bargain and Sale Deed with Covenant against Grantor's Act, containing the statutory clause as contained in section 13 of the Lien Law.

5. **CLOSING:** Is the date of settlement of the parties to each other under this agreement, at which time the Seller shall deliver the deed (and bill of sale, if appropriate) and the Buyer the purchase monies. The closing shall take place at the office of Martin S. Miller, Esq. 7 Saint John St.-Suite 101, Monticello, New York or lender on or about November 30, 2022. If this transaction is closed outside of Sullivan County the Buyer agrees to pay Seller's attorney's travel fee as follows:
   5.1. Middletown and Ellenville, NY $250.00;
   5.2. Other Orange or Ulster County $350.00;
   5.3. Dutchess and Rockland County $450.00;
   5.4. Westchester and Putnam County $650.00;
   5.5. City of New York $1,000.00.

6. **LIQUIDATED DAMAGES:** In the event the Buyer fails to close, except for the fault of the Seller, the parties agree the amount of the Seller's damages shall be difficult to ascertain. For that reason the parties agree the Seller shall retain the deposit posted upon the signing of this agreement as liquidated damages, and not as a penalty. The Buyer's attorney shall be given ten (10) days written notice of the Seller's intention to retain the deposit. If no objection is received by Seller's attorney at the end of the tenth day the monies shall be irrevocably delivered to the Seller. If the Buyer objects, then the monies may be deposited with the County Clerk of the county where the premises are situated and either party may commence an action against the other in the Supreme Court venued in said county. Seller's attorney may deduct and retain $1,000.00 from the deposit to reimburse disbursements and towards the legal expense in effecting the deposit with the Court. In said event the prevailing party shall be entitled to recover, in addition to the deposit, all costs and expenses of the litigation, including legal fees. The parties agree no claim shall be made against Martin S. Miller in any action under this agreement, except for willful misconduct, gross negligence or bad faith, and in the event such

claim is made, then the party making the same shall hold Martin S. Miller harmless and indemnify them, including the reasonable value of the legal services provided in their behalf (even if provided by said firm).

7. **APPORTIONMENTS:** To be apportioned as of midnight of the day before the closing are the:
   7.1. state/county/town tax based upon the calendar year;
   7.2. school tax on a September 1, to August 31, basis;
   7.3. homeowner's association fees, dues, and assessments, water, sewer and sanitation charges, if any, based upon appropriate periods for each.
   7.4. fuel oil based upon a reading taken within 2 days of the closing and adjusted at its current price, if there is bulk LP gas the Buyer shall purchase a full tank from the supplier at closing, if 100 pound tanks the Buyer shall pay for only unopened tanks at the current price from their supplier.
   Any errors or omissions in computing apportionments at Closing shall be corrected. This provision shall survive the Closing.

8. **ALLOWANCES/ADJUSTMENTS:** The Seller, at his option, may credit the Buyer as an adjustment of the purchase price, with the amount of any unpaid items specified in paragraph 7 together with interest and penalties thereon to the date of closing, or the next business day in the event the interest and penalties are not tolled by "postmarking" as of the closing day.

9. **BROKER:** The Buyer states he has not dealt with any broker in connection with this sale other than Timberland Properties and Cornerstone Properties of LI, co-brokers, and Seller agrees to pay the broker the commission earned, if and when title closes, in accordance with a separate agreement. If buyer represents that he has not dealt with any broker, or has dealt with a broker not specified in the foregoing sentence, then buyer agrees to hold seller harmless from any unnamed broker's claim for commission. This provision survives the closing.

10. **APPLICATION OF PURCHASE PRICE:** If there is anything else affecting the sale which the Seller is obligated to pay and discharge at the closing, Seller may use any portion of the purchase price to discharge the same. Upon request made a reasonable time before closing the Buyer agrees to provide at closing separate certified checks as requested to assist in clearing up these matters. Seller's obligation to pay a mortgage pick-up fee is limited to $200.00 per mortgage. Any charge in excess of $200.00 shall be paid by Buyer.

11. **AFFIDAVIT OF TITLE:** If the title examination discloses judgments, bankruptcies, or other returns against persons having the same of similar names as Seller, then Seller at closing shall deliver an affidavit of title to the Buyer sufficient to establish that the same are not against Seller.

12. **TRANSFER TAX:** Seller agrees to deliver a check at closing to Buyer for the payment of the transfer tax required to be paid by Seller to the State of New York at the time of closing. Buyer agrees to deliver the monies and returns to the appropriate official promptly after closing.

13. **I.R.S. 1445 CERTIFICATION:** In the event Seller is a natural person, then Seller represents he is a resident taxpayer, this transaction is not subject to backup withholding and to the right of

his name at the foot of this agreement is his Social Security number. The representations made herein shall survive the passing of title.

14. **BUYER'S LIEN/SELLER'S INABILITY TO CONVEY TITLE:** All monies paid upon this contract, and buyer's reasonable expenses for title examination, searches in accordance with the contract, and survey, not to exceed in the aggregate $500.00 are hereby made liens on the premises and collectable out of the premises. Such liens shall not continue after default in performance by the buyer. If seller is unable to transfer title to buyer in accordance with the contract, seller's sole liability shall be to refund all the monies paid on account of this contract and buyer's expenses detailed above, not to exceed $500.00. Upon refund and reimbursements by the seller this agreement shall be considered canceled, and neither party shall have any further rights against the other.

15. **SMOKE/CARBON MONOXIDE DETECTOR(S):** Seller represents that each dwelling unit which is included in the premises herein is equipped with working the statutorily compliant smoke and carbon monoxide detectors or that the same will be installed prior to the passing of title. The acceptance of the deed by Buyer is an acknowledgment that Buyer has inspected the premises, located the detectors and that they are in working condition. A single detector which tests for both smoke and carbon monoxide is adequate to conform to this representation with respect to the type of device.

16. **CONDITION OF PREMISES:**
    16.1. Buyer has inspected the premises and takes the same "AS IS" and in their present condition subject to reasonable use, wear, tear, and natural deterioration between now and the closing.
    16.2. Premises have a valid certificate of occupancy, if required by zoning.
    16.3. Seller is not aware of any toxic waste or hazardous material at the premises.
    16.4. Seller represents all improvements are within the bounds of the premises.
    16.5. Buyer shall have the right to re-inspect the premises within 36 hours of the closing to confirm conditions are as found at inspection subject to 16.1.
    16.6. No representations shall survive the closing.

17. **INSPECTION OF PREMISES:** completed

18. **DECISION TO PURCHASE:** Buyer decision to purchase the premises is exclusively made based upon Buyer's independent evaluation. Buyer has not relied upon any information or materials provided by Seller or anyone purporting to acting on Seller's behalf in making that determination.

19. **SELLER'S DISCLOSURES:**
    19.1. To the best of Seller's knowledge there is no urea foam insulation situate in the premises;
    19.2. Buyer has been provided, either in advance of signing of this agreement or together with this agreement, with the Property Condition Disclosure Statement.

20. **DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS AND LEAD WARNING STATEMENT:** Every buyer of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.
   20.1. **Seller's Disclosure** Presence of lead-based paint and/or lead-paint hazards:
      20.1.1. Seller has no knowledge of lead-based paint and/or lead-based paint hazards on the housing.
         20.1.1.1. Records and reports available to the seller: Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.
      20.1.2. **Buyer's Statement:** By signing this agreement the Buyer acknowledges:
         20.1.2.1. Buyer has received copies of all information listed above.
         20.1.2.2. Buyer has reviewed the pamphlet **Protect Your Family from Lead in Your Home.** http://www.epa.gov/opptintr/lead/pubs/leadpdfe.pdf
         20.1.2.3. Buyer has waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-paint hazards.
   20.2. **Certification of Accuracy:** The parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

21. **Home Equity Theft Prevention Act:**
   21.1. The seller represents that at the time of the signing of this contract there is no foreclosure action pending involving the property conveyed herein and that the seller is not in default in any mortgages covering the premises as the term "default" is defined in the Home Equity Theft Prevention Act, nor is seller in default with respect to any mortgage payments or mortgage obligations as the term "default" is defined in the Home Equity Theft Prevention Act. Seller represents and warrants that this representation is true now and that it will be true at the time of closing. Seller further represents and warrants that should a foreclosure action be commenced against seller involving this property between the present time and the time of closing seller or should any mortgage or mortgages lapse into default between the present time and the time of closing, Seller will immediately notify the Buyer and Buyers attorney and Buyer shall have the right to cancel the contract without penalty and to receive the refund of Buyer's entire down payment provided Buyer gives notification of such election to cancel within 20 days of receiving notification pursuant to this paragraph.
   21.2. In the event the Buyer's abstract company or title insurance company raises any objections or exceptions in the title report pertaining to the "Home Equity Theft Prevention Act" and/or the requirements thereof, and said abstract company or title company is unwilling to issue a commitment insuring against said exceptions on both

the mortgage policy and the fee policy of title insurance covering the premises, then the Buyer shall have an unqualified and absolute right to cancel the contract and to obtain a full refund of the down payment herein provided the Buyer exercises such right to cancel at or before the closing and transfer of title herein.

22. **MORTGAGE CONTINGENCY:** The obligations of Buyer hereunder are conditioned upon issuance on or before 45 days after the date Buyer receives a fully executed copy of this contract (the "commitment date") of a written commitment from any institutional lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, to Buyer, at Buyer's sole cost and expense, of $350,000.00 or such lesser sum as Buyer shall be willing to accept, at the prevailing fixed rate of interest for a term of at least ____ years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Buyer shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Buyer and members of Buyer's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) promptly give notice to seller of the name and address of each Institutional Lender to which Buyer has made such application. Buyer shall comply with all requirements of such commitment (or of any other commitment accepted by Buyer) and shall furnish Seller with a copy thereof promptly after receipt thereof. In pursuing the mortgage, Buyer agrees to use best efforts and to cooperate with the selected lending institutions in order to make a credit decision. Failure to cooperate and make reasonable efforts shall be deemed a breach of this agreement and shall entitle Seller to retain the down payment as liquidated damages. The Buyer further warrants and represents, to the best of his knowledge, he is qualified from an income and credit standpoint for the mortgage loan he is seeking from the selected lending institution. If such commitment is not issued on or before the commitment date, then, unless Buyer has accepted a commitment that does not comply with the requirements set forth above, Buyer may cancel this contract by giving notice to seller within 5 business days after the commitment date, in which case this contract shall be deemed canceled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the down payment shall be promptly refunded to Buyer and except as set forth herein. If Buyer fails to give notice of cancellation or if Buyer shall accept a commitment that does not comply with the terms set forth above, then Buyer shall be deemed to have waived Buyer's right to cancel this contract and to receive a refund of the down payment by reason of the contingency contained in this paragraph. In the event Buyers shall be entitled to a refund of their deposit the sum of $450.00 shall be retained by the seller as and for seller's expense in the preparation of the contract.

23. **NOTICE OF TITLE OBJECTIONS:** Receipt of the title report is notice of the objections to title.

24. **ENTIRE AGREEMENT:** All prior understandings and agreements between the parties are merged into this contract. This instrument completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon the statement of others. None of

the terms of this contract shall survive delivery and acceptance of the deed except those provisions which this contract expressly states shall survive such delivery.

25. **CONSTRUCTION OF AGREEMENT and ANY ATTACHED RIDER(S):** All parties have been advised by counsel of their choice, and each knowingly and intentionally waives the applicability of any rule of construction which provides that in the event of ambiguity, the provision in question is to be construed to the detriment of the party responsible for the drafting of the document.

26. **CHANGES IN AGREEMENT:** This contract may not be changed or canceled except in writing. This agreement binds the respective heirs, assigns and successors of the parties. Each party's attorney is authorized to agree in writing to any changes in the dates and time periods provided for in this contract.

27. **METHOD OF DELIVERING NOTICE:** Any and all notices to be given under the terms of this agreement shall be given in writing and may be sent by fax or e-mail as between the attorneys, or, if sent by first class mail shall be deemed received on the fifth day after the date of mailing, excepting if said date is a holiday or weekend, in which event it shall be deemed received on the first business day thereafter. If sent by fax said notice shall be deemed received when sent and a printed receipt is issued by the sending fax machine indicating receipt of the transmission in good order, except if sent after 5:00 p.m. or on a weekend or holiday it shall be deemed received the next regular business day. If by e-mail a copy of the time stamped e-mail shall be preserved and if sent after 5:00 p.m. or on a weekend or holiday it shall be deemed received the next regular business day.

28. **GENDER/SINGULAR/PLURAL:** Whenever appropriate, the singular shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

29. **NOT AN OFFER TO SELL:** When Executed by Buyer, this instrument shall constitute an offer by Buyer to purchase the premises upon the terms and conditions herein set forth. The delivery of this contract to the prospective Buyer or his agent shall be deemed an invitation of and offer to sell on the terms therein contained without any changes. The delivery of this instrument by Buyer to Seller's agent or Seller shall have no binding force or effect on Seller unless and until Seller shall have executed this instrument and a counterpart hereof has been delivered to the Buyer or his representative.

30. **COUNTERPARTS; FACSIMILE SIGNATURES:** This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same Agreement. Receipt of an executed signature page to this Agreement by facsimile or other electronic transmission shall constitute effective delivery thereof.

31. **AUTHORITY TO MAKE AGREEMENT:** Each party by its respective signatory, by the execution of this instrument, represents and acknowledges he has the authority and capacity to enter into this agreement on behalf of the party for which he signs.

32. **APPROVAL FOR SALE:** Seller will make prompt application for the approval of the sale from the Bankruptcy Court, SDNY upon receipt of the fully signed agreement. The transaction is contingent upon such approval and Seller knows of no reason it would be denied.

33. **ATTACHMENTS:**
    33.1. Property Condition Disclosure Statement
    33.2. Information regarding Sand Pond
    33.3. Tax map depiction of property

_____          _____
JENNIFER WOWK                                Social Security #

_____          _____
Alexandra Hockens , Member                   Social Security #

_____          _____
Alexandra Hockens , Member                   Social Security #



## Judicial Title
### YOUR TITLE EXPERTS

## Property Condition Disclosure Form

Seller(s) Name Jennifer L. Wowk

Property Address 31 Meyers Rd., Livingston Manor, NY 12758

### Purpose of Statement:

This is a statement of certain conditions and information concerning the property known to the seller. This disclosure statement is not a warranty of any kind by the seller or by any agent representing the seller in this transaction. It is not a substitute for any inspections or tests and the buyer is encouraged to obtain his or her own independent professional inspections and environmental tests and also is encouraged to check public records pertaining to the property.

"Residential real property" means real property improved by a one to four family dwelling used or occupied, or intended to be used or occupied, wholly or partly, as the home or residence of one or more persons, but shall not refer to (a) unimproved real property upon which such dwellings are to be constructed or (b) condominium units or cooperative apartments or (c) property on a homeowners' association that is not owned in fee simple by the seller.

### Seller's Statement:

The seller makes the following representations to the buyer based upon the seller's actual knowledge at the time of signing this document. The seller authorizes his or her agent, if any, to provide a copy of this statement to a prospective buyer of the residential real property. The following are representations made by the seller and are not the representations of the seller's agent.

| | | | YES | NO | NOT KNOWN | N/A |
|---|---|---|---|---|---|---|
| | **General Information** | | | | | |
| 1. | How long have you owned the property? | 10 yrs | | | | |
| 2. | How long have you occupied the property? | 10 yrs | | | | |
| 3. | What is the age of the structure or structures? (Note to buyer – if the structure was built before 1978 you are encouraged to investigate for the presence of lead based paint.) | 10 yrs | | | | |
| 4. | Does anyone other than yourself have a lease, easement or any other right to use any part of your property other than those stated in documents available in the public record, such as rights to use a road or path or cut trees or crops? | | ☐ | ☒ | ☐ | ☐ |
| 5. | Does anybody else claim to own any part of your property? ( If Yes, explain in space provided) | | ☐ | ☒ | ☐ | ☐ |
| 6. | Has anyone denied you access to the property or made a formal legal claim challenging your title to the property? (If Yes, explain in space provided) | | ☐ | ☒ | ☐ | ☐ |
| 7. | Are there any features of the property shared in common with adjoining land owners or a homeowners association, such as walls, fences or driveways? (If yes describe) | | ☐ | ☒ | ☐ | ☐ |
| 8. | Are there any electric or gas utility surcharges for line extensions, special assessments or homeowner or other association fees that apply to the property? | | ☐ | ☒ | ☐ | ☐ |
| 9. | Are there certificates of occupancy related to the property? (If no, explain below) | | ☒ | ☐ | ☐ | ☐ |
| | **Environmental** | | | | | |
| 10. | Is any or all of the property located in a designated flood plain? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 11. | Is any or all of the property located in a designated wetland? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 12. | Is the property located in an agricultural district? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 13. | Was the property ever the site of a landfill? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 14. | Are there or have there ever been fuel storage tanks above or below ground on the property? | | ☐ | ☒ | ☐ | ☐ |
| | If yes, are they currently in use? | | | ☒ | | |
| | Are they leaking or have they ever leaked? (If yes, explain below) | | | ☒ | | |
| 15. | Is there asbestos in the structure? (If Yes, state location or locations below) | | ☐ | ☒ | ☐ | ☐ |
| 16. | Is lead plumbing present? (If Yes, state location or locations below) | | ☐ | ☒ | ☐ | ☐ |
| 17. | Has a radon test been done? (If Yes, attach a copy of the report) | | ☐ | ☒ | ☐ | ☐ |
| 18. | Has motor fuel, motor oil, home heating fuel, lubrication oil or any other petroleum product, methane gas, any hazardous or toxic substance spilled, leaked or otherwise been released on the property or from the property onto any other property? (If yes, describe) | | ☐ | ☒ | ☐ | ☐ |
| 19. | Has the property been tested for the presence of motor fuel, motor oil, home heating fuel, lubrication oil, or any other petroleum product, methane gas, or any hazardous or toxic substance? (If Yes, attach report(s)) | | ☐ | ☒ | ☐ | ☐ |
| | **Structural** | | | | | |
| 20. | Is there any rot or water damage to the structure or structures? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 21. | Is there any fire or smoke damage to the structure or structures? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 22. | Is there any termite, insect, rodent or pest infestation or damage? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 23. | Has the property been tested for termite, insect, rodent or pest infestation or damage? (If yes, please attach report(s)) | | ☐ | ☒ | ☐ | ☐ |
| 24. | What is the type of roof/roof covering (slate, asphalt, other.)? | asphalt shingle | | | | |
| | Any known material defects? | | ☐ | ☒ | ☐ | ☐ |
| | How old is the roof? | 10yrs | | | | |
| | Is there a transferable warranties on the roof in effect now? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 25. | Are there any known material defects in any of the following structural systems: footings, beams, girders, lintels, columns or partitions? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| | **Mechanical Systems & Services** | | | | | |

| # | Question | Answer | YES | NO | NOT KNOWN | N/A |
|---|---|---|---|---|---|---|
| 26. | What is the water source? (circle all that apply) WELL MUNICIPAL PRIVATE OTHER | private well | | | | |
| | If municipal, is it metered? | | ☐ | ☐ | ☐ | ☒ |
| 27. | Has the water quality and/or flow rate been tested? (If yes, explain below) | | ☐ | ☐ | ☐ | ☒ |
| 28. | What is the type of sewage system? (Circle all that apply) PUBLIC SEWER    PRIVATE SEWER    SEPTIC    CESSPOOL | private septic | | | | |
| | If septic or cesspool: | | | | | |
| | Age? | 10yrs | | | | |
| | Date last pumped? | 6/2021 | | | | |
| | Frequency of pumping? | 5 yrs | | | | |
| | Any known material defects? | | ☐ | ☒ | ☐ | ☐ |
| 29. | Who is your electric service provider? | NYSE&G | | | | |
| | What is the amperage? | 200 | | | | |
| | Does it have circuit breaker or fuses? | circuit breakers | | | | |
| | Public or private poles? | private | | | | |
| | Any known material defects? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 30. | Are there any flooding, drainage or grading problems that resulted in standing water on any portion of the property? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |
| 31. | Does the basement have seepage that results in standing water? (If yes, explain below) | | ☐ | ☒ | ☐ | ☐ |

Are there any known material defects in any of the following? (If yes, explain below. Use additional sheets if necessary):

| # | Item | YES | NO | NOT KNOWN | N/A | # | Item | YES | NO | NOT KNOWN | N/A |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 32. | Plumbing System? | ☐ | ☒ | ☐ | ☐ | 41. | Floors? | ☐ | ☒ | ☐ | ☐ |
| 33. | Security System? | ☐ | ☐ | ☐ | ☒ | 42. | Chimney/Fireplace or stove? | ☐ | ☒ | ☐ | ☐ |
| 34. | Carbon monoxide detector? | ☐ | ☒ | ☐ | ☐ | 43. | Patio/Deck? | ☐ | ☒ | ☐ | ☐ |
| 35. | Smoke detector? | ☐ | ☒ | ☐ | ☐ | 44. | Driveway? | ☐ | ☒ | ☐ | ☐ |
| 36. | Fire Sprinkler system? | ☐ | ☒ | ☐ | ☐ | 45. | Air conditioning? | ☐ | ☐ | ☐ | ☒ |
| 37. | Sump pump? | ☐ | ☒ | ☐ | ☐ | 46. | Heating system? | ☐ | ☒ | ☐ | ☐ |
| 38. | Foundation/Slab? | ☐ | ☒ | ☐ | ☐ | 47. | Hot water heater? | ☐ | ☒ | ☐ | ☐ |
| 39. | Interior walls/ceilings? | ☐ | ☒ | ☐ | ☐ | 48. | The property is located in the following school districts | | | | |
| 40. | Exterior walls or siding? | ☐ | ☐ | ☒ | ☐ | | | | | | |

Note: Buyer is encouraged to check public records concerning the property (e.g. tax records and wetland and flood plain maps).

The seller should use this area to further explain any item above. If necessary, attach additional pages and indicate here the number of additional pages attached.

**Seller's Certification:**
SELLER CERTIFIES THAT THE INFORMATION IN THIS PROPERTY CONDITION DISCLOSURE STATEMENT IS TRUE AND COMPLETE TO THE SELLER'S ACTUAL KNOWLEDGE AS OF THE DATE SIGNED BY THE SELLER. IF A SELLER OF RESIDENTIAL REAL PROPERTY ACQUIRES KNOWLEDGE WHICH RENDERS MATERIALLY INACCURATE A PROPERTY CONDITION DISCLOSURE STATEMENT TO THE BUYER AS SOON AS PRACTICABLE, IN NO EVENT, HOWEVER, SHALL A SELLER BE REQUIRED TO PROVIDE A REVISED PROPERTY CONDITION DISCLOSURE STATEMENT AFTER THE TRANSFER OF TITLE FROM THE SELLER TO THE BUYER OR OCCUPANCY BY THE BUYER, WHICHEVER IS EARLIER.

Seller Jennifer L. Wowk                                                    date 11/27/21

Seller _[signature]_                                                        date 10/5/22

**Buyer's Acknowledgment:**
Buyer acknowledges receipt of a copy of this statement and buyer understands that this information is a statement of certain conditions and information concerning the property known to the seller. It is not a warranty of any kind by the seller or seller's agent and is not a substitute for any home, pest, radon or other inspections or testing of the property or inspection of the public records.

Buyer _[signature]_                                                        date 10/3/22

Buyer _[signature]_                                                        date 10/3/22

LIBER 905 PAGE 110

NOTE: The following reservations, covenants, and restrictions were copied from the deed conveyed by Richard Grusmark, et al, the grantors, to Swiss Forest Association, the grantees. This deed was dated Aug. 3, 1978 and recorded Sept. 1, 1978 in deed liber 905 page 99 of the Sullivan County Clerk's Office. The property herein conveyed and subject to the following is known as the "beach area."

Excepting and reserving to the grantors, their nominees, their heirs, successors, legal representatives and assigns, in common with the grantee, the perpetual use of the premises described as follows, to be used as hereinafter set forth. All that tract or parcel of land situate in the Town of Callicoon, County of Sullivan, State of New York, being a portion of the former Augustus Biffar 85 acre parcel, bounded and described as follows: Beginning at a point at the southwesterly corner of Lot No. 63 as shown on said map and running thence from said place of beginning North $61°-22'$ West 105.62 feet to a point on the shore line of Sand Pond as found July 1978; thence North $38°-47'$ East 101.59 feet along the shore of said pond to a point; Thence South $61°-22'$ East 87.71 feet to a point on the westerly line of Lot 62; Thence South $28°-38'$ West 100.00 feet along the westerly line of Lots 62 and 63 to the point or place of beginning containing 0.22 acres of land.

The 100 foot beach area described above shall be used by the Grantors Richard and Anne Grusmark and/or Grantor's nominees, their heirs, successors, legal representatives and assigns, who are in title to the remaining portion of Liber 776 of Deeds at Page 436 which lies Easterly of the center line of County Road 149 now owned by the Grantors Richard and Anne Grusmark, in commom with the members of the Grantee herein for recreational purposes including boating, bathing and fishing.

Also excepting and reserving to the Grantors, Richard and Anne Grusmark, and/or Grantors' nominees, heirs, successors, legal representatives and assigns, the perpetual use of all that portion of land under the

LIBER 905 PAGE 111

waters of Sand Pond extending from the high water mark into Sand Pond fronting on the aforesaid property, in common with the Grantees.

Should the Grantors, their nominees, their heirs, successors, legal representatives and assigns elect to subdivide the remaining portion of Liber 776 of Deeds at Page 436 hereinbefore referred to, in the conveyance of any lot or lots to a person or persons granted rights to use Sand Pond and the beach hereinabove described, each individual lot owner agrees to pay to the Grantee, its successors or assigns, the sum of $50.00 per year for the use of the lake, the beach area and the maintenance of the beach area by the Grantee. Said $50.00 to be paid to the Grantee on the first day of May in each year. This covenant shall be inserted in each deed of conveyance by the then owner of the remaining portion of Liber 776 at page 436 hereinbefore described. If any lot owner does not wish to use the lake and beach area, then this provision need not be inserted in the deed of conveyance and the lot purchaser shall not be entitled to the use of the lake and beach area and shall not be required to make the payment herein provided for the said use.

The Grantors and/or their nominees, their heirs, successors, legal representatives and assigns except and reserve the right in perpetuity to place a dock, no larger than 15 feet by 15 feet extending into the lake, said dock to be installed within 25 feet of the prolongation of the south line of Lot No. 63, where the land of Lake Front Park extends into Sand Pond.

The dock to be maintained at all times by the Grantors and/or Grantors' nominees, their heirs, successors, legal representatives and assigns in good condition, said responsibility for maintenance to be with the party then in title to the remaining portion of Liber 776 of Deeds at Page 436; or, if said parcel is subdivided, maintenance shall be the obligation of all owners of all of the subdivided portions of the remaining portion of Liber 776 of Deeds at page 436 who use the beach.

The Grantors and/or Grantors' nominees and the Grantee agree that no person or persons, firm or firms, corporation or corporations using the beach area shall be permitted to park any vehicles on any of the roads leading to the beach area or in the vicinity of the beach area, but said roads leading to the beach area shall be used solely for ingress and egress thereto by pedestrians and by motor vehicles only for the purpose of delivering boats or removing boats to and from the lake. Boats brought to the lake by vehicle will be immediately unloaded and the vehicle immediately removed.

No motors to propel boats, except electric motors will be used to propel boats launched from the beach on Lake Front Park and the Grantors and/or Grantors' nominees agree that a covenant to this effect will be inserted in all the deeds of conveyance to any portion of the remaining portion of Liber 776 at Page 436 owned by Grantors Richard and Anne Grusmark and/or others on the easterly side of the Youngsville-Livingston Manor Highway.



## PURCHASER'S RIDER TO CONTRACT OF SALE
### Between
### JENNIFER WOWK, Seller
### -to-
### CATSKILLS RETREATS LLC, Purchaser

IF ANY OF THE PROVISIONS OF THIS RIDER SHALL CONFLICT OR BE INCONSISTENT WITH THE PRINTED PORTIONS OF THIS CONTRACT OR ANY SELLER'S RIDERS, THE PROVISIONS OF THIS RIDER SHALL CONTROL.

R12. Receipt by Seller's attorney of a copy of the title report is notice of defects.

R2. Permitted exceptions shall not include those exceptions that render title unmarketable, interfere with the intended residential use of the premises, are objected to by the lender, or are objected to by Purchaser within ten (10) days after receipt of an abstract or title report. Purchaser shall have the right to elect to cancel this Contract and shall be entitled to a refund of the downpayment should Purchaser not approve of any covenants, restrictions, easements or conditions that appear in the title report that are not fully set forth in this Contract.

R3. Seller represents that Seller has not entered into any logging contracts or that there is no authorization for logging to be done on the premises and that Seller will not log premises prior to the closing of title

R4. Seller represents that the Premises abut or have a right of access to a public road.

R5. Seller represents to best of seller's knowledge that seller knows of no deposits of toxic waste on the property or contamination upon the property, presence of hazardous materials, underground fuel tanks, gases or other substances; that those statements are true to the best of the knowledge and belief of the Seller.

R6. Seller represents that Seller has no knowledge that any portion of the Premises is contained within a Federal or New York State designated wet land and/or flood zone and Purchaser's obligations hereunder are conditioned upon Purchaser confirming that said representations are true. **Purchaser's obligations are further contingent upon a determination by Purchaser's Lender that flood insurance is not mandatory.**

R7. In the event of the death or disability of a Purchaser prior to the delivery of the deed hereunder, the surviving Purchaser, Purchaser's attorney or Purchaser's legal representatives, as the case may be, hereby have the option of declaring this Contract of Sale null and void and Purchaser's entire down payment paid on account hereof shall be forthwith returned to Purchaser, Purchaser's attorney or Purchaser's legal representative, by Seller. Notice of this option shall be given by Purchaser, Purchaser's attorney or Purchaser's legal representatives, subsequent to the death or disability.

R8. The Premises and all buildings and improvements shall be delivered to Purchaser on the closing date, in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

R9. This contract and Purchaser's obligations to purchase the Premises are subject to and conditioned upon all plumbing (including water supply and septic systems, if any), electrical, heating and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale shall and the roof and basement (if any basement) all being in substantially the same condition at

closing as it was at time of purchaser's inspection.

R10. The mortgage contingency paragraph shall be a mortgage which actually funds.

R11. In the event that at any time subsequent to closing of title, the Premises shall be charged with "Roll Back Taxes" and the result is the loss of a prior tax exemption afforded to Seller, the Seller hereby agrees to reimburse Purchaser for the amount of "Roll Back Taxes" owed attributable to the time period that Seller owned the Premises. This provision shall survive delivery of the deed and transfer of title. Purchaser shall notify Seller within thirty (30) days of notice from the taxing authority of any roll back taxes via certified mail return receipt requested.

R12. The SELLER acknowledges that the funds required by PURCHASER to purchase the Premises will be obtained through a like-kind exchange company. SELLER agrees to execute the documents required by the 1031 exchange company to effectuate the release of the funds.

_____
JENNIFER WOWK

_____
SCOTT HOCKENS, MEMBER

_____
ALEXANDRA HOCKENS, MEMBER